IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRUCE LIBAN,

    Plaintiff,

v.

DEBRA MCCARTY, et. al.,

    Defendants.

CIVIL ACTION
NO. 17-0926

**OPINION**

**Slomsky, J.**                                                                                                                        September 8, 2017

### I.  INTRODUCTION

Plaintiff Bruce Liban worked for the City of Philadelphia Water Department ("PWD" or the "Department") for approximately one month. After being denied further employment, Plaintiff, proceeding pro se, initiated this action against Debra McCarty, Commissioner of PWD, and Anthony Erace, an investigator at the Philadelphia Office of the Inspector General. (Doc. No. 1.) Plaintiff raises several claims against Defendants. First, Plaintiff asserts that his termination violated his right to procedural due process under the Fourteenth Amendment of the United States Constitution. Second, Plaintiff alleges an unlawful termination claim in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). Last, Plaintiff alleges that Pennsylvania's Whistleblower Law should have protected him from being discharged. Defendants filed a Motion to Dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), which is now before the Court for disposition.[1] (Doc. No. 6.)

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367.

1

## II. BACKGROUND

From September 19, 2016 to October 20, 2016, Plaintiff worked at PWD as a Graduate Electrical Engineer. (Doc. No. 1 ¶¶ 1, 66–67.) Plaintiff was initially placed on Philadelphia's mandatory six-month probationary period for certain civil service employees.[2] Plaintiff was discharged approximately one month after starting his employment at PWD. The events that led to his termination follow.

Plaintiff began having problems almost immediately after starting his new position. His first assignment was to work on an electrical improvement project at the Torresdale Raw Water Pumping Station in Philadelphia. (Doc. No. 1 ¶ 4.) During his first week, he raised a complaint about one of the contractors with whom he was working. (Doc. No. 2 at 3–4.) It stated as follows:

> It has come to my attention from Ed Zalewski that in order to save money a contractor is trying to use a cheaper 500 horsepower motor on the Torresdale Raw Water Pumping Station Project without doing the required balancing. This may result in an unstable condition when the shaft is spinning that results in the rotating assembly breaking apart. When the rotating assembly breaks apart it can fill the room with flying steel killing many people. This letter is being written to prevent this possibility and prevent another tragedy similar to what happened on June 5, 2013 at 22nd and Market Streets.[3] This event (if it were to happen) could

---

[2] The Philadelphia Civil Service Regulations state:

APPOINTMENTS FROM ELIGIBLE LISTS. All persons appointed from open, competitive, promotional or preferred eligible lists shall be subject to a probationary period of six (6) months, except as may be otherwise provided in the Regulations. The period of probation is expressly understood to be part of the entrance or promotional examination or reinstatement and that the status of the appointee or reinstated employee as a permanent employee is not approved until successfully completing his period of probation.

Phila. Civil Serv. Regs. § 14.01.

[3] Plaintiff is referring to a tragic accident that occurred on June 5, 2013, near the corner of 22nd and Market Streets in Philadelphia. A building undergoing demolition collapsed onto a neighboring building housing the Salvation Army, trapping a number of people under the rubble. Six people were killed instantly, and several others were severely injured. This

2

> be much worse. As a registered professional engineer I know that safety comes first. I know that the pump base costs 1.1 to 2 million dollars. Clearly the pump is destroyed if the rotating assembly breaks apart. I obviously don't want 1.1 to 2 million dollars [sic] worth of damage. The problem is that I cannot tolerate the loss of life associated with this failure (it can be as bad as a building with bodies in it).
>
> This problem can be solved as a purchasing problem because of the way the contract is written. To do this the city will need to enforce the contract. If the contractor does not agree, the city has to figure out how to take this part of the contract away from the contractor and give it to the proper entity specified in the contract. This is one way to solve the problem. There may be other ways, but I don't know enough about how the city does business to even suggest the proper method.
>
> Addendum No. 1, Bid Nos.: 2046, opening date: December 17, 2015 says, "Motors are to be provided by Patterson Pump as noted. Sherwood & Logan is local Patterson Pump representative. Contact: Ed Zalewski – (215)702-1402." This is under number 3.
>
> Note 3 under 500 HP Pump Motors on P.W.D. Work # 64060 says, "The existing pumps were manufactured by Patterson Pump Company and shall remain. Patterson Pump Company: 2129 Ayersville Road, Tocca, GA 30577; Tel 706-886-2101." Note 4 says, "Contractor shall provide turnkey installation, testing and commissioning of new 500 HP motors using Patterson Pump Company to provide design, motors, shafts, mounting hardware, site installation support and testing for a complete installation. Contractor shall contract with Sherwood Logan & Associates (SLA), local manufacturer's representative for Patterson Pump Company. Contact: Ed Zalewski, Sherwood Logan & Associates; Tel: 215-702-1402."
>
> Ed tells me that he has not seen the purchase order yet. Since only his company, by contract, may supply the pumps, he should eventually see the purchase order. Motors from anyone else should be rejected by inspection when they arrive. Patterson Pump Company can only balance the motors they supply for liability reasons. Unbalanced motors may not be turned on for safety reasons. Please take all necessary actions to prevent the possible loss of life due to improper actions.

(Id.) Plaintiff caused alarm among PWD staff by sending e-mails and printed copies of his complaint to several employees in various units of PWD. (Id.)

On September 28, 2016, Plaintiff was asked to attend a meeting with his supervisors to discuss his complaint, as well as Plaintiff's irrational behavior, which was brought to the

---

> accident, albeit tragic, is wholly unrelated to the work of PWD. Therefore, it is irrelevant to this case.

supervisors' attention. (Doc. No. 1 ¶¶ 32–33, 36–37; Doc. No. 6 at 3–4.) At this meeting, Plaintiff was advised that there were "several layers of [safety] protocol and procedures already established" that he did not follow. (Doc. No. 2 at 7.) Although his safety concerns were appreciated, his complaints dealt with the design and redesign of equipment, which was monitored by the Operations Unit of PWD, not the Construction Unit to which he was assigned. (Id.) Plaintiff's supervisors suggested that he should focus on learning his job responsibilities as a Graduate Electrical Engineer in the Construction Unit of PWD, and should avoid interfering with the job responsibilities of other PWD Units. (Id.) Plaintiff was given a warning that any other abrupt actions would lead to termination of his employment. (Id.) Despite being given a warning, Plaintiff continued to have problems at work.

On October 18, 2016, Plaintiff was asked by his supervisor to take minutes at a meeting concerning an electrical improvement project. (Doc. No. 1 ¶¶ 54–59.) Plaintiff took the meeting minutes, but also inappropriately included some of his personal beliefs in the minutes (Id. ¶ 58), "again insulting and questioning the competency of a colleague." (Doc. No. 6 at 4.) For example, he wrote that discussions at the meeting made "it clear that there is a lack of understanding of what is going on" as to one of his coworkers. (Doc. No. 2-1 at 29.)

The following day, Plaintiff was informed that his probationary period of employment was terminated.[4] (Doc. No. 1 ¶ 61.) Later that evening, Plaintiff sent an e-mail to McCarty, who

---

[4] Plaintiff attached to the Complaint a performance report completed by his direct supervisor, which stated that Plaintiff was being fired for poor work performance, failure to take initiative in his specific work assignments, and distracting behavior in other units that were not related to his position. (Doc. No. 2 at 8.) The performance report reads as follows:

> This report reflects your poor work performance over the past one (1) month. You did not show initiative in your specific work assignment of inspecting projects and instead were motivated to check design calculations, presented ideas to redesign projects already in the construction stage inspite [sic] of being reminded

serves as the Commissioner of PWD, entitled "termination, murder, retaliation . . . ."[5] On October 20, 2016, Plaintiff received a formal termination letter ending his brief employment at PWD. (Doc. No. 1 ¶ 66.)

On February 28, 2017, Plaintiff initiated this action against Defendants. (Doc. No. 1.) First, Plaintiff alleges that his termination violated his due process rights under the Fourteenth Amendment of the United States Constitution. Second, he raises a Title VII claim in connection with his termination. Third, Plaintiff asserts that Pennsylvania's Whistleblower Law should have protected him from being fired. On April 28, 2017, Defendants filed a Motion to Dismiss the Complaint. (Doc. No. 6.) Plaintiff filed a Response in Opposition to the Motion. (Doc. No. 8.)

---

      on several occasions. You excelled in creating confusion, chaos and panic in two (2) different projects without properly checking data and facts. This clearly is unbalanced, irrational, & eccentric behavior. You repeatedly took abrupt actions and were warned in a meeting dated 9-24-16 by Mr. Rotermund. You have since not learned from your three (3) mistakes done in your first three (3) weeks. This indicates to the Department that you are better suited in design work rather than construction project Management work. Therefore, the Department cannot afford to retain you under this title and separation is required.

    (Id.) As previously noted, Plaintiff attached this performance report to his Complaint in support of his claims.

[5] In this e-mail, Plaintiff accused McCarty of murder (or approving of murder) multiple times. (Doc. No. 2 at 13.) McCarty became fearful for her safety after reading the e-mail, so Plaintiff was banned from accessing any PWD facilities. (Doc. No. 6 at 4 n.2.)

Plaintiff's accusations continued after his termination. Following his firing, he sent out "hundreds of E-mails," contacting the Occupational Safety and Health Administration (OSHA), every city council person's office, the State Utility Authority in Harrisburg, the Philadelphia Office of the Inspector General (Erace's employer), and the Philadelphia District Attorney, among others. (Doc. No. 1 ¶¶ 81, 85–86, 88, 94.)

5

On July 13, 2017, a hearing was held on the Motion. (Doc. No. 13.) The Motion is now ripe for a decision.[6]

### III.   STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 663; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, 231 n.14 (3d Cir. 2013) (citing Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n.27 (3d Cir. 2010)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike

---

[6] In reaching a decision, the Court has considered the Complaint (Doc. No. 1), the exhibits filed in support of the Complaint (Doc. No. 2), the Motion to Dismiss the Complaint (Doc. No. 6), Plaintiff's Response in Opposition (Doc. No. 8), and arguments made by the parties during the hearing on the Motion (Doc. No. 13).

6

conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234–35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679. The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

When determining a motion to dismiss, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Where, as here, the complaint is filed pro se, the "complaint, 'however inartfully pleaded' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" Fatone v. Latini, 780 F.3d 184, 193 (3d Cir. 2015) (quoting Haines v. Kerner, 404 U.S. 519, 520–21 (1972)). It should be dismissed only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of [his] claim that would entitle [him] to relief." Olaniyi v. Alexa Cab Co., 239 F. App'x 698, 699 (3d Cir. 2007) (citing McDowell v. Del. State Police, 88 F.3d 188, 189 (3d Cir. 1996)).

IV. ANALYSIS

The Complaint raises several claims against Defendants. First, it alleges a claim pursuant to 42 U.S.C. § 1983 for an alleged violation of Plaintiff's procedural due process right under the Fourteenth Amendment. (Doc. No. 1 at 1–2, 5.) Second, the Complaint asserts an unlawful

7

termination claim in violation of Title VII. Third, the Complaint raises a claim of retaliatory termination in violation of Pennsylvania's Whistleblower Law. Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants seek to dismiss the Complaint in its entirety. (Doc. No. 6.) The Court will address each of Plaintiff's claims in turn.[7]

### A. Plaintiff Has Not Plausibly Alleged a § 1983 Claim Against Defendants

Plaintiff alleges that his procedural due process right was violated when he was terminated from PWD. A plaintiff raising a claim under § 1983 must allege a violation of a right secured by the Constitution or the laws of the United States, and must show that the alleged

---

[7] In addition to the claims mentioned above, Plaintiff raises other non-cognizable claims against Defendants. For example, Plaintiff seeks to hold Defendants criminally liable for his termination from PWD. (Doc. No. 1 ¶¶ 81, 83, 129.) He writes that he "considers actions that might cause injuries to be criminal activities." (Id. ¶ 81.) He also writes that he contacted the district attorney's office to launch a criminal prosecution against Defendants. (Id. ¶¶ 81, 94, 97.) Defendants argue that Plaintiff lacks standing to initiate a criminal prosecution against them. (Doc. No. 6 at 9.)

To have standing to bring a claim in federal court, a plaintiff must show that he has "suffered an injury in fact—an invasion of a legally protectable interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (citations omitted). "It is well-established that 'a private citizen lacks a judicially cognizable interest in the prosecution of another.'" Williams ex rel. Faison v. U.S. Penitentiary Lewisburg, Pa., 377 F. App'x 255, 256 (3d Cir. 2010) (quoting Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973)). Plaintiff's claim is not cognizable because he has requested a criminal prosecution of Defendants in relation to his termination. This claim will be dismissed.

In addition, Plaintiff raises a claim, alleging violations of regulations imposed by the Occupational Health and Safety Administration (OSHA). (Doc. No. 1 ¶ 121.) Defendants argue that this claim must be dismissed because no private right of action exists under OSHA. (Doc. No. 6 at 10.)

"With the Occupational Safety and Health Act of 1970, Congress created [OSHA] to assure safe and healthful working conditions for working men and women by setting and enforcing standards and providing training, outreach, education and assistance." *Occupational Health and Safety Administration: About OSHA*, https://www.osha.gov/about.html (last visited Aug. 29, 2017). OSHA, however, "does not give aggrieved employees a private right of action." Sorge v. Wright's Knitwear Corp., 832 F. Supp. 188, 121 (E.D. Pa. 1993). Since OSHA does not permit private rights of action, Plaintiff's claim under OSHA will be dismissed.

deprivation was committed by a person acting under color of state law. West v. Adkins, 487 U.S. 42, 48 (1988). Defendants argue that no underlying constitutional violation is alleged in the Complaint. Additionally, Defendants assert that Plaintiff failed to allege that they had any personal involvement in the firing decision.

### 1. Plaintiff Has Failed to State an Underlying Constitutional Violation

Plaintiff contends that his Fourteenth Amendment procedural due process right was violated when PWD terminated his employment. (Doc. No. 1.) Plaintiff claims that he was deprived of this right because "there was no hearing before his termination." (Doc. No. 1 at 5.)

Procedural due process under the Fourteenth Amendment requires "notice and an opportunity to be heard before the Government deprives [one] of property." United States v. James Daniel Good Real Property, 510 U.S. 43, 48 (1993). To state a § 1983 claim for a violation of procedural due process, a plaintiff must show that the state deprived him of something in which he had a protected property interest. Id. A cognizable property interest can be created by several sources, such as state law, implied contracts, or express contracts. Miller v. Twp. of Readington, 39 F. App'x 774, 775 (3d Cir. 2002).

Plaintiff states that he has a property interest in continued employment at PWD. It is well established, however, that Pennsylvania public employees who are hired at will do not possess a protected property right in their continued employment. See Elmore v. Cleary, 399 F.3d 279, 283 (3d Cir. 2005) (stating that "a public employee in Pennsylvania generally serves at the pleasure of her employer and thus has no legitimate entitlement to continued employment"); see also Hill v. Borough of Kutztown, 455 F.3d 225, 234–35 (3d Cir. 2006) (finding that a former borough employee who had been fired from his position as borough manager was hired at will and therefore did not have a protected property interest in his continued employment).

Pennsylvania's public, probationary employees have no property interest in their continued employment. See Grabiak v. Pennsylvania State Police, 276 F. App'x 210, 213 (3d Cir. 2008) (concluding that a probationary Pennsylvania state trooper failed to state a procedural due process claim in connection with his termination because he did not have a property interest in his continued employment); see also Thomas v. Town of Hammonton, 351 F.3d 108, 113 (3d Cir. 2003) (dismissing a former dispatcher's § 1983 claim against the city, her former employer, after holding that she was a newly hired probationary employee who could be fired with or without cause and thus did not have a property interest in her continued employment); Blanding v. Pennsylvania State Police, 12 F.3d 1303, 1307 (3d Cir. 1993) (holding that a Pennsylvania statute giving new state troopers an eighteen-month probationary period did not give a probationary state trooper a property interest that entitled him to due process protection prior to his discharge). In other words, "[t]o have a property interest in a job . . . a person must have more than a unilateral expectation of continued employment; rather, [he] must have a legitimate entitlement to such continued employment." Elmore, 399 F.3d at 282.

Viewing the Complaint in the light most favorable to Plaintiff, he has not plausibly stated that he had a protected property interest in his continued employment at PWD. Plaintiff alleges that he had been working at PWD for approximately one month when he was terminated. (Doc. No. 1 ¶¶ 1, 67.) However, he was initially hired on only a six-month probationary period of employment, during which he could be fired with or without cause. See Bartal v. Borough of Laureldale, 515 F. Supp. 2d 556, 562 (E.D. Pa. 2007) (finding that a "probationary employment sets those employees apart from others, signaling that they are new . . . and that they must prove themselves in the new position before being considered permanently employed therein" (quoting Olson v. Borough of Avalon, 811 A.2d 66, 71 (Pa. Commw. Ct. 2002))). The Philadelphia Civil

Service Regulations, which applied to Plaintiff's position, explained that a public employee on a probationary period of employment could be terminated.[8] Plaintiff has alleged, therefore, nothing more than a "unilateral expectation of continued employment," which is insufficient to state a protected property interest in his continued employment at PWD. Elmore, 399 F.3d at 282.

Plaintiff is unable to plead a protected property interest in his employment and as such, he cannot state a violation of his right to procedural due process to support a § 1983 claim. Plaintiff's § 1983 claim against Defendants will be dismissed.

### 2. Plaintiff Has Failed to Allege That Defendants Were Personally Involved in His Termination

Plaintiff believes that Erace should be held liable for his termination from PWD. To the contrary, Defendants argue that Erace, who did not work for PWD, was not personally involved in Plaintiff's termination from the Department. (Doc. No. 6 at 7.)

To state a § 1983 claim, a plaintiff must allege that a defendant had "personal involvement in the alleged wrongdoing." See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (establishing that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability

---

[8] The Philadelphia Civil Service Regulations state:

> REJECTION OF EMPLOYEE DURING PROBATIONARY PERIOD. At any time during the probationary period, the appointing authority, or his/her designated representative, with the approval of the Director, may discharge or demote a probationary employee, if said appointing authority, or his/her designated representative, determine that such employee is unable or unwilling to perform his/her duties satisfactorily, or that his/her habits and dependability do not merit his/her continuance in the City service or that information revealed during the pre-employment background investigation requires removing the employee from the position. . . .

Phila. Civil Serv. Regs. § 14.04.

cannot be predicated solely on the operation of *respondeat superior*")). "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." Chavarriaga v. New Jersey Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015). In addition, "[a]lthough a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." Id. (citing Baker v. Monroe Twp., 50 F.3d 1186, 1194 (3d Cir. 1995)).

Here, Plaintiff has failed to allege Erace's personal involvement in the termination decision. Erace is mentioned in the following four paragraphs of the Complaint:

> 88. On 11/21/16 Bruce Liban sent the data on the problem with the motor installation to Anthony Erace at the office of the inspector general. The purpose of this was to allow the inspector general's office to take action against the people involved in the improper installation of the 500 horsepower motors.
>
> 89. Bruce Liban has tried many times to verify Anthony Erace's professional engineering license in the state of Pennsylvania. No record comes up under his name. This means that he does not have a professional engineering license in the State of Pennsylvania.
>
> 90. Bruce Liban requested that Anthony Erace provide the name or names of the person or people he talked to to come to a conclusion. [Erace] said that the inquiry that the city conducts is confidential.
>
> 91. The court will make the final call. If the judge orders something, Anthony decides if he obeys the order or faces the consequences from the judge. Figure 8 is Anthony Erace's 12/19/16 memo where he declares that what was done is confidential. How this was done may become critical to what actions the court needs to take.

(Doc. No. 1 ¶¶ 88–91.) These paragraphs concerning Erace do not involve the decision to terminate Plaintiff from his position at PWD. Erace does not work at PWD. (Id. ¶ 88.) Rather, Erace is one of the many people who were contacted about the perceived safety issue Plaintiff observed at the Department's construction site. (Id.) None of the allegations in the Complaint

suggest that Erace, an employee at a wholly separate entity, was personally involved in the decision to end Plaintiff's employment at PWD. Therefore, the claims against Erace will be dismissed.

### B. Plaintiff Has Not Plausibly Alleged an Unlawful Termination Claim in Violation of Title VII of the Civil Rights Act of 1964

Plaintiff asserts a claim against McCarty and Erace for unlawful termination in violation of Title VII of the Civil Rights Act of 1964. (Doc. No. 1.) Defendants argue that Plaintiff's claim must be dismissed because individual employees may not be held liable under Title VII. (Doc. No. 6 at 9.) Title VII provides, in relevant part:

> It shall be an unlawful employment practice for an employer—
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a) (2012). The statute defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person." Id. § 2000e(b). "[T]he clear majority of the courts of appeals that have considered [the question whether individual employees or agents can be held liable under Title VII] have held that [they] cannot be . . . ." Sheridan v. E.I. Dupont de Nemours & Co., 100 F.3d 1061, 1077 (3d Cir. 1996) (citing Williams v. Banning, 72 F.3d 552 (7th Cir. 1995)); Tomka v. Seiler Corp., 66 F.3d 1295, 1313–17 (2d Cir. 1995); Gary v. Long, 59 F.3d 1391, 1399 (D.C. Cir. 1995); Grant v. Lone Star Co., 21 F.3d 649 (5th Cir. 1994); Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 587–88 (9th Cir. 1993)).

13

The Complaint here raises claims against individual employees McCarty and Erace, and not against Plaintiff's employer. (See Doc. No. 1.) Because Plaintiff has raised a Title VII claim against only individual employees, which is prohibited, this claim must be dismissed. See Vangjeli v. City of Philadelphia, 655 F. App'x 132, 133 (3d Cir. 2016) (stating that "Title VII does not recognize individual employee liability"); see also Bright v. LabCorp, 627 F. App'x 75, 77 (3d Cir. 2015) (stating that "individual employees cannot be held liable under Title VII"); Hukman v. US Airways/Am. Airlines, No. 17-0741, 2017 WL 3310677, at *3 (E.D. Pa. Aug. 3, 2017) ("Although Title VII prohibits employers from engaging in discriminatory employment practices, individual employees may not be held liable." (citation omitted)). Consequently, Plaintiff's Title VII claim will be dismissed.

### C. Plaintiff Has Not Plausibly Alleged a Retaliatory Termination Claim in Violation of Pennsylvania's Whistleblower Law

Plaintiff also raises a claim that he was unlawfully terminated in violation of Pennsylvania's Whistleblower Law.[9] (Doc. No. 1 ¶ 121.) Defendants argue, to the contrary, that Plaintiff fails to state a claim for a violation of the Whistleblower Law because his complaint was not objectively reasonable as required by the statute. (Doc. No. 6 at 10.)

Pennsylvania's Whistleblower Law provides, "[n]o employer may discharge, threaten or otherwise discriminate or retaliate against an employee . . . because the employee . . . makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste."[10]

---

[9] In referring to his claim for a violation of Pennsylvania's Whistleblower Law, Plaintiff states that "there actually appears to be two forms of this law." (Doc. No. 1 ¶ 121.) Plaintiff, however, does not identify a second whistleblower law on which he bases his claim. Therefore, this Court will address only the claim for a retaliatory termination in violation of Pennsylvania's Whistleblower Law.

[10] 43 Pa. Cons. Stat. § 1423(a) (2014). Pennsylvania's Whistleblower Law provides as follows:

14

To state a claim for retaliatory termination in violation of Pennsylvania's Whistleblower Law, a plaintiff must plead a protected report of wrongdoing and a causal connection between the report and the adverse employment action. Golaschevsky v. Commonwealth, Dep't of Envtl. Prot., 720 A.2d 757, 758 (Pa. 1998). "If the employee makes this showing, the burden shifts to the employer to establish that there was a legitimate reason for the adverse action. Once the employer offers such evidence, the burden shifts back to the employee to show that this reason was merely pretextual."[11] Anderson v. Bd. of Sch. Dirs. of Millcreek Twp. Sch. Dist., 574 F. App'x 169, 173 n.4 (3d Cir. 2014) (citation omitted).

The test for whether an employer's conduct is a protected report of wrongdoing is objective, not subjective. Kimes v. Univ. of Scranton, 126 F. Supp. 3d 477, 505 (M.D. Pa. 2015). That is, a plaintiff must prove that there was an actual violation of a law, regulation, ordinance, or code of conduct, which violation "is not of a merely technical or minimal nature."[12] Id. It

---

> No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste by a public body or an instance of waste by any other employer as defined in this act.

Id.

[11] Pennsylvania's Whistleblower Law further states:

> It shall be a defense to an action under this section if the defendant proves by a preponderance of the evidence that the action by the employer occurred for separate and legitimate reasons, which are not merely pretextual.

43 Pa. Cons. Stat. § 1424(c).

[12] The Whistleblower Law in turn defines "wrongdoing" as "[a] violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political

does not matter whether the plaintiff holds a belief, even if well founded, that the conduct constitutes wrongdoing. Sukenik v. Twp. of Elizabeth, 131 A.2d 550, 555–56 (Pa. Commw. Ct. 2016). "An actual violation is required." Id. (citing Kimes, 126 F. Supp. 3d at 505).

In addition, to sustain a Whistleblower Law claim a plaintiff must plead facts or surrounding circumstances that support an inference that the report of wrongdoing led to his dismissal. Bennett v. Republic Servs., Inc., 179 F. Supp. 3d 451, 456 (E.D. Pa. 2016). "An employee who has been terminated based on a filed report and wants to base his or her complaint on their employer's violation under the Whistleblower Law must specify how their employer is guilty of . . . wrongdoing." Id. (quoting Gray v. Hafer, 651 A.2d 221, 225 (Pa. Commw. Ct. 1994), aff'd, 669 A.2d 335 (Pa. 1995)). Furthermore, "[t]hey must also show by concrete facts or surrounding circumstances that the report led to their dismissal, such as that there was a specific direction or information they received not to file the report or there would be adverse consequences because the report was filed." Id.

Viewed in the light most favorable to Plaintiff, the Complaint fails to plead a protected report of wrongdoing. Plaintiff contends that the complaint he e-mailed to several employees in various units at PWD was a protected report of wrongdoing. (Doc. No. 1 ¶ 121.) As noted, the e-mail contained a complaint about one of the contractors with whom Plaintiff was working. (Doc. No. 2 at 3–4.) The e-mail also noted that Plaintiff thought the contractor was "trying to use a cheaper 500 horsepower motor" on the Torresdale Raw Water Pumping Station Project, and Plaintiff believed another type of motor should be used. (Id.) Plaintiff perceived this as a safety issue. However, the concerns in the Complaint do not rise to the level of wrongdoing; that is, an

---

subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer." 43 Pa. Cons. Stat. § 1422.

actual violation of law, ordinance, regulation, or code of conduct.[13]  See Lape v. Pennsylvania, 157 F. App'x 491, 498 (3d Cir. 2005) (holding that a corrections officer who sued the state Department of Corrections for retaliatory termination after marrying a former inmate failed to establish that she was fired in retaliation for a letter she sent to her employer regarding certain types of offenders and proposed solutions, as required to maintain a claim under Pennsylvania's Whistleblower Law, where the letter did not report an instance of wrongdoing).  Because Plaintiff has failed to plead a protected report of wrongdoing, his retaliatory termination claim in violation of Pennsylvania's Whistleblower Law will be dismissed.

V.   FUTILITY TO AMEND COMPLAINT

Plaintiff will not be granted leave to further amend his Complaint.  Federal Rule of Civil Procedure 15(a) provides that "[t]he court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility.  In re Burlington Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).  For example, "a district court need not grant leave to amend a complaint if 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'"  Kundratic v. Thomas, 407 F. App'x 625, 630 (3d Cir. 2011) (quoting Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000)).

After reviewing the allegations in the Complaint, it is clear that allowing Plaintiff to amend his pleadings would be futile.  Plaintiff has had the opportunity to review the Motion to

---

[13] Plaintiff claims that "Pennsylvania State Law" requires him to "take certain actions related to safety issues."  Plaintiff does not specify which law, but apparently is referring to Pennsylvania's Whistleblower Law.  The Court disagrees.  From a plain reading of the statute, the law is a defense to retaliatory action; it does not require action.  43 Pa. Cons. Stat. § 1423(a) (2014).  Plaintiff also attached to his Complaint a safety memorandum sent to employees by McCarty, and apparently felt obligated by this memorandum to report what he perceived to be a safety issue.  (See Doc. No. 1 ¶¶ 15, 18, app. at 2.)  But Plaintiff fails to establish a violation of that memorandum that would constitute wrongdoing under the Whistleblower Law.  (See id.)

17

Dismiss, to respond to the Motion, and to argue the merits of the Complaint at the hearing held on July 13, 2017 before this Court. (Doc. Nos. 6, 8, 13.) Plaintiff was put on notice of the deficiencies of the Complaint from the Motion to Dismiss and at the hearing, yet was unable to resolve these deficiencies. See Kundratic, 407 F. App'x at 630 (finding that a plaintiff asserting § 1983 claims is put on notice of the deficiencies of his complaint by way of a defendant's motion to dismiss); see also Krantz v. Prudential Invs. Fund Mgmt. LLC, 305 F.3d 140, 144 (3d Cir. 2002) (finding that granting leave to amend a complaint is futile when "the plaintiff was put on notice as to the deficiencies of his complaint, but chose not to resolve them"). Therefore, granting leave to amend would be futile and will not be allowed in this case.

## VI.  CONCLUSION

For the foregoing reasons, the Motion to Dismiss (Doc. No. 6) will be granted. An appropriate Order follows.